MARY J. SKED, individually and as guardian, &c.,

*v.*

PENNINGTON SPRING WATER COMPANY.

[Decided January 28th, 1907.]

Where the owner of land granted defendant the right to dig and build a reservoir at a certain spring on the land, the reservoir not to occupy more than one-half acre, and to lay pipes therefrom over such land and to draw the water from the reservoir, and defendant located a reservoir, an injunction would lie at the suit of the owner to restrain him from entering, after ten years, to put down a well in order to acquire an additional supply of water, although the well would be within an area, including a reservoir, of one-half an acre, if the boundaries should be fixed as desired by defendant.

On final hearing on pleadings and proofs.

*Mr. Frank S. Katzenbach, Jr.,* and *Mr. Frederick R. Brace,* for the complainants.

*Mr. J. Lefferts Conard* and *Mr. John H. Backes,* for the defendant.

BERGEN, V. C.

On September 14th, 1896, Phillip S. Sked, from whom these complainants took title, being the owner of a farm containing about one hundred and twenty acres of land, entered into an agreement with the defendant in writing, by the terms of which he granted, bargained and sold to the defendant the right to enter upon said premises

"to dig and build a reservoir at what is known as the 'Middle Spring,' the said reservoir not to occupy or cover more than one-half acre of land, also may lay pipes from the said reservoir over the lands of the said Phillip S. Sked, to the main pipe line of the said Pennington Spring Water Company three feet beneath the surface of the ground, and may draw and use all the water from said reservoir."

Immediately after the execution of the agreement the defendant entered upon the lands, built a reservoir, in which it collected the water from the spring, and for the past ten years has conducted the water thus impounded through pipes laid across the lands of the grantor to its main distributing pipe, and thus applied the water for public and private use as allowed by its charter. The area of ground covered by the reservoir is less than a half acre, and the defendant, now requiring a larger supply of water than flows from the spring, has recently, in order to acquire an additional supply, commenced sinking a well, by driving an iron tube into the ground, outside of the reservoir, upon lands adjacent thereto which would be within an area, including the reservoir, of one-half acre, if its boundaries be now fixed where the defendant desires. The complainants deny this right, insisting that, as no precise amount of land was granted, the only description being that the quantity taken should not exceed one-half acre, and the defendant having, by building its reservoir,

established the area required for it, fixed, by practical location, the limit of the grant, has not now, after so long a period, the right to increase it in any direction it may choose, thereby taking lands of the complainants lying beyond the boundary of the original selection. The effect of the agreement is a grant to enter upon the lands now of the complainants, to dig and build a reservoir, to collect therein and draw therefrom, at its pleasure, the water flowing from the Middle Spring, and creates only an easement. In *Owen* v. *Field, 102 Mass. 90,* the grantor granted, sold and conveyed to the grantee the whole use of four springs, and the right and privilege of laying an aqueduct across other lands of the grantor, together with the right and privilege of making reservoirs, and in construing this grant the court said: "They were at liberty to dig up their pipes and abandon the enterprise whenever they found it for their interest to do so. The effect of the indenture seems to be that it gave a license or authority to the party of the second part to be exercised so long as they should see fit, or, more properly, that it granted to them an easement."

The agreement which we are now considering is substantially like the contract between the parties considered and interpreted by the court in the case just referred to. By it the defendant is to have the right to draw and use all of the water from the reservoir, which manifestly means all the water from the spring. The important element in the grant is the right to use and draw all the water from the spring, and such right is only an easement. *Race* v. *Ward, 4 El. & B. 702.* The defendant, having had granted to it, by the owner of a tract of land, a right to enter upon said lands, to build a reservoir thereon at what is known as the "Middle Spring," provided the reservoir should not occupy or cover more than one-half acre of ground, acquired an easement thereunder of indefinite location, but not the right to enlarge its scope where it had been once fixed and exercised in a definite manner. This defendant, acting under its grant, located its reservoir at the Middle Spring, and occupied therewith so much of the land as it deemed necessary for its purposes, and now, since the extent of the grant as determined by the defendant at the time has been acquiesced in by the parties for ten

years, it is committing an act which amounts to an enlargement of the easement, and violates the rule that when a grant is made in terms so general or indefinite that its construction is uncertain and ambiguous, the contemporaneous acts of the parties giving a practical construction to it is to be taken as a manifestation of the intention of the parties.

"When a right granted has been once exercised in a fixed and defined course with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. If it be admitted that he has the right originally to select the place in which the easement is to be enjoyed, he cannot afterwards alter it. Convenience and justice both require this limitation on the right, otherwise it would be open to questions of great doubt, and would make the servient estate in a great measure subject to the unrestrained control of the owner of the easement." *Jennison* v. *Walker*, 77 *Mass.* 423. To the same effect is the opinion of Mr. Justice Knapp, delivering the judgment of our court of errors and appeals in *Jaqui* v. *Johnson*, 27 *N. J. Eq.* (*12 C. E. Gr.*) 526. See, also, *Wynkoop* v. *Burger*, 12 *Johns.* (*N. Y.*) 222; *Lore* v. *Stiles*, 25 *N. J. Eq.* (*10 C. E. Gr.*) 381, 383.

To adopt the view of the defendant in this case would permit it from time to time, without limitation, whenever it saw fit, to pass and repass over the lands of the complainants, either to make constant enlargements of the reservoir or to sink driven wells at its pleasure, thereby imposing a continuing burden upon the servient tenement which could not have been within the intention of either party when the grant was made. The grantor may be willing to suffer the inconvenience of a single invasion necessary for the purpose of constructing defendant's works, but it by no means follows that he would contract to allow constant invasions covering an indefinite period, and justice requires that this defendant be limited to the selection made by it as to the extent of the easement to be enjoyed by it under the indefinite terms of this grant.

As the defendant is putting upon complainants' land a permanent structure, and under its claim of right may continue to sink numerous wells, which, in my opinion, it has no right to do, I will advise a decree restraining it.