Point Breeze Ferry and Improvement Company,
appellant,

*v.*

William Bragaw et al., respondents.

1. On foreclosure of a mortgage given by a riparian owner covering the shore and including the land lying under water in front of the upland, which was afterwards leased from the state and improved by filling below high-water mark, before the sale is ordered, the rights of the mortgagee in the land that was submerged at the time the mortgage was given and has since been reclaimed, should be defined.

2. The defendant company, which purchased a lease of the land under water from the state and reclaimed it by filling, has the higher title and superior right to be first paid the price of such purchase and the value of the improvement.

---

On appeal from a decree of the chancellor made in *Bragaw's Exrs.* v. *Currie et al.*

On December 15th, 1873, Robert T. Currie executed and delivered to William Bragaw a bond for the payment of $10,000,

secured by mortgage on a tract of land in Jersey City, described·
by metes and bounds, except in the fourth or easterly line, and·
running easterly to New York bay, "including all land lying·
under water in the New York bay in front of the upland
embraced within the aforesaid boundaries, together with all and.
singular the tenements, hereditaments and appurtenances" &c.

On May 9th, 1875, Robert T. Currie and his brother, William,.
who owned adjoining land fronting on New York bay, made a·
contract with the Morris & Cummings Dredging Company to·
fill in the lands under water in front of both properties.

On the same day, May 9th, 1875, Robert T. Currie and Wil-
liam Currie conveyed to the Point Breeze Ferry and Improve-
ment Company the front of their adjoining lands, two feet in
depth back from high-water mark, and assigned to them the·
contract for filling with the dredging company. The deed was a.
warranty deed, for the consideration of $24,000, and with no·
reference to the Bragaw mortgage. On September 30th, 1876,
the riparian commissioners of the state conveyed to the Point
Breeze company "all the land lying under the water of the New
York bay, between high-water mark on the shore of said bay
and the exterior line for piers, as established by the riparian·
commissioners," in front of said lines. The dredging company
have filled beyond these lands, far out into the bay, and have·
expended, the testimony shows, over $200,000 in reclaiming the·
land under water below low-water mark. January 28th, 1886,.
Robert T. Currie and wife conveyed to the Point Breeze com-
pany a narrow strip of land across the upland retained by him·
for a way to the New Jersey Central railroad.

William Bragaw, the mortgagee, having died, his executors·
foreclosed his mortgage, and claim that it covers the land filled
in front of Robert T. Currie's land described in the mortgage.

The decree of foreclosure orders that the property be sold in·
the following order : first, the upland still remaining in Robert
T. Currie ; second, the strip of land running to the railroad,.
conveyed in 1886 ; third, the two feet on the water front, con-
veyed in 1875, and fourth, all the right, title and interest which
Robert T. Currie had and held in and to the land lying under·

water in New York bay, in front of the upland described in the complainant's mortgage, on December 15th, 1873 (the date of the mortgage), and also all the right, title and interest of, in and to the said land under water which the said Robert T. Currie and wife, or either of them, have, since December 15th, 1873, acquired in law or in equity.

The Point Breeze Ferry and Improvement Company appeals from the third and fourth points in the decree.

*Mr. Gilbert Collins,* for the appellant.

*Mr. Charles H. Winfield,* for the respondents.

The opinion of the court was delivered by

SCUDDER, J.

The decree for sale of the mortgaged land in the reverse order of the conveyances, and ordering the portion yet remaining in the mortgagor to be first sold, is correct according to the usual course of sales in equity of lands encumbered by mortgages.

The third parcel, being the two feet fronting on New York bay, is described as two feet northwesterly from high-water line in New York bay, and running on a line parallel to said high-water line, and two feet northwesterly therefrom &c. This is clearly within the mortgaged premises as part of the upland. The further order for sale of the right, title and interest of the mortgagor to the land lying under water at the time of the mortgage and since, is too indefinite. Before such sale is ordered, the rights of the mortgagee in the land that was submerged at the time the mortgage was given, and has since been reclaimed, should be established and defined, otherwise an unascertained interest will be sold, which would be unjust to all parties. The purchaser at such sale would buy an equitable estate and interest which could only be settled by a suit in equity. It would be contrary to equitable principles thus to invite further litigation, and make it necessary to bring the parties again before the court in other proceedings to determine rights which can be ascertained

Point Breeze Ferry and Imp. Co. v. Bragaw.

in the present suit. They should be first defined, so as to do justice to all, when the lands are sold for the payment of the mortgage debt.

At the time the mortgage was given the mortgagor was a riparian owner, and, as such, he had the right of preemption and reclamation to the lands under water in front of his lands, bordering thereon. These could not be taken from him by the state, through its agents, the board of riparian commissioners, until after six months' notice in writing he should have neglected to apply for the grant or license, and neglected to pay, or secured to be paid, the price the said commissioners fixed. *Rev. p. 984* § *8; Laws of 1869.* He could apply to the commissioners for a lease, grant or conveyance, upon such a compensation therefor to be paid to the State of New Jersey, as should be determined by the commissioners. *Rev. p. 985* § *1; Laws 1871.* These rights he conveyed to the mortgagor as security for his mortgage debt, who thereby became entitled to an equitable estate or interest therein.

The defendant, the Point Breeze Ferry and Improvement Company, took the two feet strip above high-water mark, or the *ripa*, subject to the mortgage, and the right of preemption and reclamation of the land under water, also subject to the equitable interest of the mortgagee. *Boon* v. *Kent, 15 Stew. Eq. 131.* But as those rights were imperfect and could only be made valuable and available to the mortgagor at the time the mortgage was given by purchase of a lease or conveyance from the state, and reclamation of the land under water, the company which made such purchase and improvement has the higher title and superior right to be first paid the price of such purchase and the value of the improvement. It appears that the rights of the mortgagee can be best ascertained and secured by declaring the expense of purchasing the submerged land from the state, and of the reclamation of the land under water in front of the mortgaged lands, to be a first lien, and the mortgage a second lien on the land which was below high-water mark at the time the mortgage was given. The ascertainment of the rights of the mortgagee should be settled by the court before sale is made of this portion of the

·mortgaged premises, but this need only be done after the upland ·described in the mortgage has been sold, if there should be deficiency in such sale to pay and satisfy the amount secured by the mortgage.

The decree should be. reversed, and modified to define more particularly the rights of the mortgagee, as above indicated.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Dixon, Garrison, Magie, Scudder, Van Syckel, Brown, Cole, Smith—9.